**NOT RECOMMENDED FOR PUBLICATION**
File Name: 09a0607n.06

**No. 08-3759**

**FILED**
**Aug 26, 2009**
LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

SULIMAN MOHAMMED IBRAHIM a/k/a/ )
MOHAMMED IBRAHIM SULIMAN, )
　 )
　Petitioner, )
　 )　ON PETITION FOR REVIEW FROM
v. )　A FINAL ORDER OF THE BOARD
　 )　OF IMMIGRATION APPEALS
　 )
ERIC H. HOLDER, United States Attorney General, )
　 )
　Respondent. )

Before: SILER, GIBBONS, and GRIFFIN, Circuit Judges.

**SILER**, Circuit Judge. Suliman Mohammed Ibrahim challenges the Board of Immigration Appeals's (BIA) denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). He also argues that the Immigration Judge (IJ) and the BIA (1) erroneously concluded that he was ineligible for asylum from Iraq because he was firmly resettled in Poland and (2) should have remanded pursuant to the Refugee Crisis in Iraq Act of 2007 (RCIA). For the following reasons, we deny the petition in part and dismiss it in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

Ibrahim left his native Iraq in 1979 to pursue a graduate degree in Poland. When he left Iraq, he was required to attest to the Ba'ath Party that he would not marry a foreigner and that he would return to Iraq. According to Ibrahim, his brother had to "guarantee" that he would return to Iraq.

Ibrahim resided in Poland continuously for approximately ten years. In 1987, he married a Polish citizen and subsequently fathered two children. When he married the Polish citizen, he was issued the equivalent of a Polish green card. In 1989, he entered the United States without his wife or children.

In 1989, Ibrahim filed applications for asylum, withholding of removal, and protection under CAT. In 1992, while his applications were pending, he returned to Poland to care for his wife who had become ill. Upon reentry into the United States, he was paroled pending deportation proceedings. Since his arrival in the United States, Ibrahim has fathered two United States citizen children. During the removal proceedings, he conceded his inadmissability. However, he re-filed his applications for asylum, withholding of removal, and protection under CAT.

At the proceedings following the re-filing of his applications, Ibrahim testified that he had been harassed by the Iraqi government while in Poland. He presented the testimony of three witnesses– Nadeem Zoma, David Enwyia, and Jesse William. The IJ determined that the testimony of Zoma and Enwyia was unreliable and lacked foundation, as neither had been in Iraq for years. The testimony of the third witness, William, was not captured in the record.

In 2000, the IJ issued her decision denying Ibrahim's applications for asylum, withholding of removal, and protection under CAT. The IJ denied the application for asylum because she determined that he had firmly resettled in Poland. The IJ also denied his withholding of removal claim because he failed to show that he would be persecuted on account of his being a returning Iraqi male married to a foreign woman. In addition, the IJ determined that he failed to show that he would be punished as a result of his membership in a cognizable social group, namely as a student who

failed to return after completion of his degree. Lastly, the IJ concluded that Ibrahim had not established that he was more likely than not be subject to torture with the acquiescence of the Iraqi government.

On appeal, the BIA remanded the proceedings back to the IJ for completion of the transcript, noting that William's testimony was missing. On remand, William could not be located in order to permit him to testify a second time. However, the parties agreed that the IJ's summary of William's testimony accurately represented the testimony. In addition, the IJ concluded that Ibrahim was entitled to another hearing on his applications for relief and protection from removal due to changed circumstances in Iraq.

After the subsequent hearing, the IJ again denied Ibrahim's applications. The IJ determined that he remained ineligible for asylum based on her earlier determination that he firmly resettled in Poland. Alternatively, the IJ found that he failed to establish that any potential harm he would face would be on account of a protected ground. The IJ also concluded that he failed to present any evidence supporting his suggestion that he may be harmed by people who would consider him a traitor or a spy. Assuming the existence of the protected social group, the IJ found that Ibrahim failed to present any evidence that anyone, other than his family, knows that he has lived in the United States.

The IJ also denied Ibrahim's claim of feared persecution on account of changed circumstances in Iraq. Although the IJ recognized that circumstances have changed in Iraq, Ibrahim failed to establish that any former Ba'athists who were permitted to return to the Iraqi government

had previously been involved in human rights abuses. The IJ rejected his CAT claim on the same basis.

Ibrahim appealed to the BIA. He asserted that the IJ erred in denying his applications for relief. He also asked the BIA to remand his proceedings to permit him to apply for special rule cancellation of removal and to permit him to re-apply for asylum under the RCIA.

In 2008, the BIA denied the motions to remand and dismissed the appeal of the IJ's decision. With respect to the special rule cancellation of removal, the BIA initially denied the motion as a matter of discretion because Ibrahim could have requested that relief when he was first placed in removal proceedings. Alternatively, the BIA denied the motion because he failed to provide any evidence that he was then a Polish national. The BIA also denied his motion to remand under the RCIA and affirmed the conclusions of the IJ regarding the applications for asylum, withholding of removal, and protection under CAT.

## DISCUSSION

### A. Applications for Relief

Ibrahim contends that the IJ and the BIA erred in denying his applications. We review the BIA's factual determinations under the "substantial evidence" standard and will overturn its decision not simply if the record supports a contrary conclusion, but only where such a conclusion is compelled. *See Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004).

The Attorney General is prohibited from granting asylum if he determines that the alien "was firmly resettled in another country prior to arriving in the United States." 8 U.S.C. §

1158(b)(2)(A)(vi). In implementing this prohibition, the Attorney General promulgated 8 C.F.R. § 1208.15, which provides that an alien is resettled:

> if, prior to arrival in the United States, he or she entered into another country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement.

8 C.F.R. § 1208.15 (2008).

The BIA's conclusion that Ibrahim was resettled in Poland at the time of his entry into the United States is supported by substantial evidence. He lived in Poland for approximately ten years. During that time he was permitted to attend school and subsequently found employment as an engineer with a state-owned company. While in Poland, he married a Polish citizen and fathered two Polish-citizen children. His wife and children remain in Poland. Most importantly, Ibrahim received a green card which would have permitted him to remain in Poland so long as he remained married.

The IJ and the BIA also concluded that Ibrahim failed to establish that he had a well-founded fear of persecution on account of a protected ground. This conclusion is supported by substantial evidence and an alternative conclusion is not compelled by the record.

Ibrahim does not seek asylum or withholding of removal on the basis of past persecution. Instead he bases his application on his alleged fear of future persecution. Specifically, he alleges that he fears future persecution on account of (1) his Sunni Muslim religion and (2) the fact that he has strong ties to the United States which will result in his being targeted for persecution in Iraq.

Although there is evidence in the record establishing that Sunni Muslims have been targeted in Iraq, the record does not compel the conclusion that Ibrahim will face this persecution. Ibrahim

testified that he would be able to freely practice his religion in his hometown of Fallujah. Moreover, his family members had not suffered any persecution on account of their religious beliefs. Furthermore, the evidence provided by Ibrahim indicates that Sunni Muslims have suffered some difficulties in Samarra and Najaf, but not in Fallujah.

Ibrahim also failed to establish that his alleged strong ties to the United States would result in any future persecution. The evidence submitted by Ibrahim merely demonstrates that Iraqis who worked for the United States while in Iraq, such as interpreters and other contractors, were targeted. He failed to show that he was among this group of Iraqis who worked for the United States while in Iraq. Furthermore, he did not provide any evidence that anyone other than his family is even aware that he has lived in the United States.

Ibrahim also claims to fear future persecution on account of changed circumstances in Iraq. However, as the IJ noted, this claim is based on a fear resulting from general civil strife and is not tied to his religious belief or membership in any political or social group.

Likewise, Ibrahim failed to meet his burden regarding his claim for protection under CAT. In order to succeed on a claim for protection under CAT, the alien must demonstrate that it is "more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2) (2008). Such torture must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1) (2008).

Ibrahim does not cite to any portion of the record demonstrating that the Iraqi government either engages in or acquiesces in the kidnapings or other conduct constituting torture. He merely

alleges that such conduct does occur and then contends that the Iraqi government is "wilfully blind."

His assertion, without evidence, does not compel an alternative conclusion and his petition for relief

under CAT is denied.

**2. Special Rule Cancellation of Removal**

Under § 309 of the Illegal Immigration Reform and Immigration Responsibility Act of 1996

(IIRIRA), a Polish national who entered the United States on or before December 30, 1990, and

applied for asylum on or before December 31, 1991, is eligible for "special rule" cancellation of

removal. *See* IIRIRA, Pub. L. No. 104-208, § 309(c)(5)(C)(i)(I)(bb), *amended by* Nicaraguan

Adjustment and Central American Relief Act (NACARA) § 203(a)(1) (1997).

Section 309 of the IIRIRA also provides that special rule cancellation of removal is "[s]ubject

to the provisions of the [INA] . . . including section 242(a)(2)(B) of such Act." IIRIRA § 309(f)(1).

Section 242(a)(2)(B)(ii) provides that:

> [n]otwithstanding any other provision of law . . . no court shall have jurisdiction to
> review – any other decision or action of the Attorney General or the Secretary of
> Homeland Security the authority for which is specified under this subchapter to be
> in the discretion of the Attorney General or the Secretary of Homeland Security, other
> than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii).

This court has reviewed the effect of this jurisdiction-stripping provision on determinations

made by the Attorney General under the special rule cancellation of removal. In *Ruiz v. Gonzales*,

we held that "[d]eterminations by the Attorney General as to whether an alien satisfies the

requirements of § 309(c)(5)(C)(i)(I)(bb) [special rule cancellation of removal], are 'final and shall

not be subject to review by any court.' IIRIRA § 309(c)(5)(C)(ii)." 455 F.3d 661, 662 (6th Cir. 2006). For this reason we dismissed Ruiz's petition for lack of jurisdiction. *Id*.

Likewise, Ibrahim seeks review of the Attorney General's discretionary determination that he does not satisfy the requirements of § 309(c)(5)(C)(i)(I)(bb). As held in *Ruiz*, we lack jurisdiction to review this issue.

### 3. RCIA

Ibrahim seeks review of the BIA's denial of his motion to remand to permit him to re-apply for asylum under §§ 1243 and 1247 of the recently-enacted RCIA. We will reverse a denial of a motion to remand only if the BIA abuses its discretion. *See Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006).

Section 1243 provides that Iraqis who are members of a religious or minority community and who have close family members in the United States qualify as "refugees of special humanitarian concern" eligible for special processing. However, as the BIA noted in its denial of the motion to remand, § 1243 relates to refugee determinations made by the Secretary of State, not the United States Attorney General or the Secretary of Homeland Security.

Although § 1243 applies only to refugee determinations made by the Secretary of State, § 1247 provides relief to Iraqi refugees living in the United States. Section 1247 provides:

> [a]n alien who applied for asylum or withholding of removal and whose claim was denied on or after March 1, 2003, by an asylum officer or an immigration judge [as opposed to a consular office within the Department of State] solely, or in part, on the basis of changed country conditions may, notwithstanding any other provisions of law, file a motion to reopen such claim in accordance with subparagraphs (A) and (B) of 240(c)(7) of the [INA] not later than six months after the date of the enactment

of the [RCIA] if the alien– (1) is a citizen or national of Iraq; and (2) has remained in the United States since the date of such denial.

RCIA § 1247.

The BIA determined that the IJ's denial of Ibrahim's application for asylum was not based on changed country conditions in Iraq. This was not an abuse of discretion. Indeed, Ibrahim conceded that the IJ's denial of his applications was not based on changed country conditions as required under § 1247. His applications had been denied by the IJ in 2000. After the BIA remanded that decision for the sole purpose of ascertaining William's testimony, the IJ conducted another hearing in 2006. Noting that conditions in Iraq had changed since her 2000 decision denying relief, the IJ provided Ibrahim with another opportunity to establish a well-founded fear of persecution. After he failed to establish eligibility for relief, the IJ again denied his applications. The denial of Ibrahim's applications in 2006 was not based on changed country conditions but instead was based on his inability to establish eligibility for relief.

**DENIED** in part and **DISMISSED** in part.