**NOT RECOMMENDED FOR PUBLICATION**
File Name: 16a0457n.06

**No. 15-3628**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 11, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOSE ALEJANDRINO VASQUEZ-PADILLA, aka Alejandro Navarro, | ) ) ) | |
| Petitioner, | ) ) | ON PETITION FOR REVIEW FROM THE UNITED STATES |
| v. | ) ) | BOARD OF IMMIGRATION APPEALS |
| LORETTA E. LYNCH, U.S. Attorney General, | ) ) ) | OPINION |
| Respondent. | ) ) | |

**BEFORE:** **GILMAN, WHITE, and STRANCH, Circuit Judges.**

**JANE B. STRANCH, Circuit Judge.** Jose Alejandrino Vasquez-Padilla, a native and citizen of Honduras, petitions this court for review of a decision by the Board of Immigration Appeals (BIA or the Board) affirming the denial of Vasquez-Padilla's application for withholding of removal and for relief under the Convention Against Torture (CAT). Because we find that substantial evidence supports the BIA's decision and that Vasquez-Padilla's challenge to the BIA's streamlined review of his application is unpersuasive, his petition for review is DENIED.

## I. BACKGROUND

Jose Alejandrino Vasquez-Padilla was born in Honduras on May 1, 1968. According to Vasquez-Padilla, he first entered the United States without inspection in 1989 through San Ysidro, California. The United States government placed Vasquez-Padilla in removal

proceedings around twenty years later after he was found living and working in Michigan. Vasquez-Padilla initially applied for asylum and withholding of removal, but he withdrew both applications with prejudice on July 13, 2010, agreeing instead to depart the United States voluntarily pursuant to an immigration judge's order. Vasquez-Padilla maintains that he left the United States voluntarily in November 2010. He says that he returned to Honduras by way of Mexico, spending time in the Honduran capital of Tegucigalpa before continuing to the city of El Progreso where his parents and sisters reside.

Vasquez-Padilla did not remain in Honduras for long, however. He testified that one day in early December 2010 he was driving in El Progreso when two or three men stood in front of his car. According to Vasquez-Padilla, the men were criminals whom he had never seen before. One of them broke the glass at the back of his car, climbed in, and demanded that Vasquez-Padilla hand over everything he had. The man brandished a gun and shot Vasquez-Padilla in the leg. Vasquez-Padilla testified that a family member drove him to a clinic in El Progresso for medical treatment. He could not remember the name of the clinic where he was treated, but stated that he did not go to "Escuela," which the IJ clarified meant the "medical college of Honduras." Vasquez-Padilla says he left Honduras the next day, travelling by bus to Guatemala, where he stopped for additional medical treatment, and then through Mexico to the border with the United States. He testified that he paid someone to take him across the border near Brownsville, Texas and then made his way back to Michigan, arriving in Detroit on or around January 1, 2011.

On January 10, 2012, the Department of Homeland Security (DHS) served Vasquez-Padilla with a Notice To Appear (NTA) in another round of removal proceedings. The NTA charged that Vasquez-Padilla was subject to removal under section 212(a)(6)(A)(i) of the

Immigration and Nationality Act (INA) for entering the United States illegally. Vasquez-Padilla appeared before an immigration judge (IJ) with counsel for an initial hearing on March 6, 2012. At the hearing, Vasquez-Padilla admitted the allegations in the NTA and conceded that he was removable. The hearing continued on May 8, at which time Vasquez-Padilla submitted an application for withholding of removal under the INA and relief under the CAT. Vasquez-Padilla's application asserted that when he returned to Honduras in 2010, he "was treated as a foreigner," and "was constantly harassed, threatened and finally assaulted by the gangs in my country." (A.R. 355.) He stated that "[a]fter enduring several months of constant threats and verbal and physical abuse[,] I was assaulted severely by the gangs and after suffering this major injury I decided to return to the US in an effort to preserve my life." (*Id.*) Vasquez-Padilla further alleged that, because he "had been residing in the United States for over a decade," he "was presumed wealthy and a foreigner in [his] own country" and feared "harm based on the false perception of wealth" if he returned to Honduras. (*Id.*) As an example, Vasquez-Padilla explained that he "went back once and at that time I was assaulted and wounded by the gangs." (*Id.*) Vasquez-Padilla also attached to his application a report on human rights in Honduras in 2010 published by the United States Department of State.

The IJ held a merits hearing regarding Vasquez-Padilla's application on January 13, 2014. Vasquez-Padilla, who was again represented by counsel, testified through an interpreter and relayed the story of his voluntary departure, his time in Honduras including the robbery and attack in his car, and his return to the United States. He also entered several documents into the record, such as a letter signed by a doctor at the Medical College of Honduras and issued El Progreso stating that Vasquez-Padilla "was provided medical care due to a wound[ ] caused by a gun" and "was released from the hospital on December 7, 2010" (*id.* at 263; *see also id.* at

264), additional State Department reports and travel warnings concerning Honduras, and a number of reports and articles about Honduras authored by various news agencies and non-governmental organizations. The government, for its part, cross-examined Vasquez-Padilla and submitted a copy of his Honduran passport for inclusion in the record, which included a visa that Vasquez-Padilla obtained in Tegucigalpa on November 15, 2010—prior to the alleged attack— allowing him to return to Mexico. On cross-examination, Vasquez-Padilla admitted that he never intended to stay in Honduras and that it was always his plan to return to the United States as quickly as possible.

The IJ issued an oral ruling at the conclusion of the hearing, denying Vasquez-Padilla's application for withholding of removal and relief under the CAT. Specifically, the IJ found that Vasquez-Padilla was not credible and that he had failed to make the required showings for either withholding of removal under the INA or for relief under the CAT. Vasquez-Padilla appealed to the BIA, arguing that the IJ had erred and, moreover, that intervening BIA precedent regarding withholding of removal required remand. The Board dismissed Vasquez-Padilla's appeal on May 15, 2015, in a decision issued by a single member of the Board. Vasquez-Padilla timely petitioned this court for review.

## II. STANDARD OF REVIEW

Where the BIA reviews the IJ's decision and issues a separate opinion, we review the Board's opinion as the final agency determination and may consider the IJ's decision to the extent the BIA adopted its reasoning. *Sanchez-Robles v. Lynch*, 808 F.3d 688, 691–92 (6th Cir. 2015). We review the factual findings of the IJ and the Board, including adverse-credibility determinations, for "substantial evidence." *Marouf v. Lynch*, 811 F.3d 174, 180 (6th Cir. 2016). This deferential standard requires us "to uphold the Board's findings as long as they are

'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Hanna v. Holder*, 740 F.3d 379, 386 (6th Cir. 2014) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). "To reverse under the substantial evidence standard, the evidence must be so compelling that no reasonable factfinder could fail to find the facts were as the alien alleged." *Id.* (quoting *Mostafa v. Ashcroft*, 395 F.3d 622, 624 (6th Cir. 2005)). "In other words, 'in order to reverse the BIA's factual determinations, the reviewing court must find that the evidence not only supports a contrary conclusion, but indeed *compels it*.'" *Hassan v. Holder*, 604 F.3d 915, 925 (6th Cir. 2010) (emphasis in original) (quoting *Mullai v. Ashcroft*, 385 F.3d 635, 638 (6th Cir. 2004)). With respect to an adverse-credibility determination, if it is "supported by substantial evidence, the adverse credibility determination is entitled to deference regardless whether the inconsistencies [underlying the determination] 'bear on the heart' of a petitioner's claim." *Marouf*, 811 F.3d at 180 (quoting *El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009)).

### III.     ANALYSIS

As explained, Vasquez-Padilla challenges the BIA's affirmance of the IJ's adverse-credibility determination, denial of withholding of removal under the INA, and denial of relief under the CAT. He also argues that the BIA's failure to assign his appeal to a three-member panel violates his right to due process. We address each argument in turn.

#### A.     Adverse-Credibility Determination

Under the REAL ID Act of 2005, triers of fact are to consider "the totality of the circumstances" and "all relevant factors" in making credibility determinations in removal proceedings. 8 U.S.C. § 1229a(c)(4)(C). Triers of fact may base credibility determinations on the following:

the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

*Id.* Here, the BIA reviewed the IJ's adverse-credibility determination and found that it was "not clearly erroneous" because the IJ "provided specific and cogent reasons for doubting the veracity of [Vasquez-Padilla's] testimony including inconsistencies between his testimony and prior statements, and his demeanor during testimony." (A.R. 3.) For example, the BIA noted the IJ's finding that Vasquez-Padilla claimed in his application for withholding of removal "that after 'several months of constant threats' and verbal and physical abuse, he was assaulted severely by gangs and after suffering a major injury he decided to return to the United States." (*Id.* at 4 (citation omitted).) But at his hearing, as both the IJ and the BIA found, Vasquez-Padilla "testified about only one adverse encounter with gang members" that "occurred in December 2010, when he had been in Honduras for less than a month." (*Id.*) That encounter allegedly involved "being shot during a robbery in his car," but Vasquez-Padilla's "application does not specifically mention this incident" and "only vaguely refers to being 'assaulted and wounded by gangs.'" (*Id.* (citation omitted).) Consequently, the BIA concluded—in accord with the IJ—that "[t]he lack of specificity in the application is glaring enough to undermine [Vasquez-Padilla's] credibility." (*Id.*) The BIA also discussed with approval the IJ's finding that Vasquez-Padilla's "demeanor during his testimony further diminished his credibility" because he "laughed inappropriately during his testimony and when asked to explain why he was laughing, he did not

provide any explanation for his conduct." (*Id.*) Finally, the BIA agreed with the IJ that Vasquez-Padilla's testimony about his medical treatment "was inconsistent with a central piece of his corroborative evidence, the letter from the Medical College of Honduras," because Vasquez-Padilla testified that the clinic he visited was not associated with that institution. (*Id.*)

Vasquez-Padilla attacks the BIA's affirmance of the IJ's adverse-credibility finding on three primary grounds. First, he argues that because he laughed only when the IJ asked whether he was divorced, no reasonable trier of fact could have found that the laugh undermined his overall credibility. (*See* Pet'r's Br. at 20–25.) Second, Vasquez-Padilla contends that it was unreasonable for the BIA to conclude that he omitted the robbery and shooting from his application for withholding of removal and for relief under the CAT or that his application was glaringly unspecific with respect to that event because the application said that he was "assaulted and wounded by gangs." (*See id.* at 26–27.) And third, Vasquez-Padilla maintains that the BIA placed an unreasonable amount of emphasis on his statement that the clinic he visited was not the Medical College of Honduras. (*See id.* at 27–30.)

With respect to Vasquez-Padilla's laughter during questioning about his marital status, even if we were not troubled by his single laugh given the context, the IJ's and BIA's finding to the contrary is supported by the record, *see Khozhaynova v. Holder*, 641 F.3d 187, 193 n.3 (6th Cir. 2011), and we have previously sustained an adverse-credibility finding that was based in part on a petitioner's inappropriate laughter, *see Cheboun v. Holder*, 385 F. App'x 560, 562, 564 (6th Cir. 2010). In reaching this conclusion, we recognize that laughter during a hearing need not be equated with a lack of credibility.

Vasquez-Padilla's second argument regarding inconsistencies between his written application and oral testimony is likewise unavailing. Substantial evidence supports the finding

that Vasquez-Padilla's oral testimony—describing his brief stay in Honduras, his predetermined intent to return to the United States, and a single violent incident—conflicts with written statements in his application, including the statement that "[a]fter enduring several months of constant threats and verbal and physical abuse, I was assaulted severely by the gangs and after suffering this major injury I decided to return to the US in an effort to preserve my life." (A.R. at 355.)

Also supported by substantial evidence is the finding that the letter Vasquez-Padilla submitted from the Medical College of Honduras is inconsistent with his testimony that he did not go to that institution for treatment. When the IJ asked Vasquez-Padilla if he went to the Medical College of Honduras for treatment after the shooting, Vasquez-Padilla replied, "No." (*Id.* at 190.) When the IJ asked him if he was "sure about that" Vasquez-Padilla answered, "No, I did not go to that one." (*Id.*) Vasquez-Padilla also testified that he did not know whether the clinic he attended was related to a larger hospital, which could support a finding that he unknowingly attended a clinic affiliated with the Medical College of Honduras. There is substantial evidence in the record to support the BIA's finding of an inconsistency, however, which is sufficient under the deferential standard of review. *Hanna*, 740 F.3d at 386.

Even if we were to disregard these three inconsistencies, it cannot be said that the remaining record in this case compels the conclusion that Vasquez-Padilla is credible. Applying the pertinent standard to the record in this case, we find insufficient grounds to reverse the adverse-credibility determination. *See Hassan*, 604 F.3d at 925.[1]

---

[1] Because we do not disturb the adverse-credibility determination, we do not address Vasquez-Padilla's arguments regarding "otherwise credible" aliens. (*See* Pet'r's Br. at 31–39.)

**B.** **Withholding of Removal and Relief under the CAT**

An applicant for withholding of removal under the INA bears the burden of proof "to establish that his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.16(b). If an applicant can show past persecution in the country of removal on account of one or more of these five protected grounds, then he or she is entitled to a rebuttable presumption of a qualifying future threat in that country. *Id.* § 1208.16(b)(1). In the absence of past persecution, an applicant must "establish that it is more likely than not that he or she would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon removal to that country." *Id.* § 1208.16(b)(2). This standard cannot be met if an "immigration judge finds that the applicant could avoid a future threat to his or her life or freedom by relocating to another part of the proposed country of removal and, under all circumstances, it would be reasonable to expect the applicant to do so." *Id.* Protection under the CAT, meanwhile, is available only to applicants who establish that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Id.* § 1208.16(c)(2).

The BIA concluded that "[t]he record evidence does not establish [Vasquez-Padilla's] eligibility for withholding of removal [under the INA] and protection under the CAT in the absence of credible testimony." (A.R. 4.) We hold that this finding is supported by substantial evidence. The letter from the Medical College of Honduras—which is the only individualized evidence Vasquez-Padilla offered in removal proceedings other than his own testimony—by itself does not compel the conclusion that Vasquez-Padilla suffered past persecution or is likely to suffer harm in Honduras on account of a protected ground. Vasquez-Padilla thus could meet

the burden of proof for withholding of removal under the INA only if his testimony were credited, meaning that the adverse-credibility determination is fatal to his claim. *See El-Moussa*, 569 F.3d at 257. The same holds true for his CAT claim. Vasquez-Padilla argues that the BIA failed to consider a State Department country report when it denied his application for CAT protection, but even assuming that the report was overlooked, generalized allegations of torture from the report standing alone could not establish the "*particularized* threat of torture" required for Vasquez-Padilla to obtain relief under the CAT. *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1155 (6th Cir. 2010) (emphasis in original) (quoting *Almuhtaseb v. Gonzales*, 453 F.3d 743, 751 (6th Cir. 2006)). Generalized allegations of torture, without more, do not compel the finding that it is more likely than not that Vasquez-Padilla would be tortured upon removal to Honduras. *Id.* at 1156; *see also Melchor-Reyes v. Lynch*, No. 15-3929, 2016 WL 1445322, at *4 (6th Cir. Apr. 12, 2016).

We also agree with the BIA that, despite Vasquez-Padilla's argument to the contrary, "there is no basis to remand the record to consider the Board's new precedent concerning particular social group[s]" under the INA. (A.R. 6.) The BIA's intervening decisions accord with our opinion in *Umaña-Ramos v. Holder*, 724 F.3d 667 (6th Cir. 2013), and thus merely clarified existing law. We note, moreover, that Vasquez-Padilla's claimed social group was "persons who are considered foreigners" (A.R. 347), and we have "repeatedly rejected the position that individuals returning from the United States to their home countries comprise a particular social group." *Sanchez-Robles*, 808 F.3d at 692.

## C. BIA Method of Review

Lastly, Vasquez-Padilla protests the BIA's choice to streamline his appeal—*i.e.*, to refer his appeal to a single member for decision as opposed to a three-member panel. (*See* Pet'r's Br.

at 50–63.)  We assume without deciding that this issue is reviewable.  *See, e.g.*, *Reyna v. Lynch*, 631 F. App'x 366, 369 n.3 (6th Cir. 2015); *Lopez-Salgado v. Lynch*, 618 F. App'x 828, 833–34 (6th Cir. 2015).  Vasquez-Padilla frames this as a due process issue, but we have "reaffirmed . . . on numerous occasions" that "the streamlined procedures of the BIA do not violate due process." *Lumaj v. Gonzales*, 462 F.3d 574, 576 (6th Cir. 2006) (citing *Denko v. INS*, 351 F.3d 717, 729 (6th Cir. 2003)).  We are thus unpersuaded by his argument.

## IV.     CONCLUSION

For the foregoing reasons, we DENY Vazquez-Padilla's petition for review.