In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 20-3215

ERIC NYANDWI,

*Petitioner,*

*v.*

MERRICK B. GARLAND,
Attorney General of the United States,

*Respondent.*

---

On Petition for Review of an Order of the
Board of Immigration Appeals
No. A094-731-778

---

ARGUED SEPTEMBER 17, 2021 — DECIDED OCTOBER 8, 2021

---

Before SYKES, *Chief Judge,* and FLAUM and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Eric Nyandwi, facing removal from the United States because of multiple felony convictions, applied for a deferral of removal under the Convention Against Torture. He claimed that he faced a substantial risk of torture if returned to the country of Burundi, of which he is a citizen. Both an immigration judge and the Board of Immigration

Appeals found no such substantial risk and so denied his application. In this petition for review, Nyandwi asks us to remand the case, arguing that the immigration judge and the Board committed various legal errors when they denied his application. We disagree, find no error, and therefore deny the petition.

I

Nyandwi, a citizen of Burundi and a native of Tanzania, came to the United States as a refugee on August 9, 2006 and became a lawful permanent resident. After Nyandwi was convicted of robbery in the second degree, receiving a stolen firearm, and illegal possession of a controlled substance, the Department of Homeland Security began removal proceedings against him under 8 U.S.C. § 1227(a)(2)(A)(iii), (B)(i). Nyandwi conceded his removability as an aggravated felon but filed an Application for Asylum and Withholding of Removal, seeking a deferral under the Convention Against Torture (CAT). At a removal hearing before an immigration judge (IJ), Nyandwi submitted evidence of country conditions in Burundi and testified that he was an ethnic Twa whose parents fled Burundi in 1996 because of a civil war that resulted in the death of Twas, including his family members. Nyandwi told the IJ that he feared being removed to Burundi because he was a returning Twa refugee, was unable to speak the native language, had no proof of political allegiance to the governing regime, and was unable to pay compulsory election contributions.

The IJ denied Nyandwi's claim for deferral under CAT, concluding that "Respondent has not established a substantial risk that he will be targeted for torture if he returns to Burundi" because he did not claim that anyone in Burundi had

a current intent to torture him specifically. Rather, his fears relied on what the IJ called a hypothetical chain of events: that he would be detained by authorities upon return to Burundi because he was a refugee, viewed as an oppositionist to the ruling regime because he was a Twa and financially incapable of paying compulsory election contributions, and therefore singled out for torture. The IJ faulted Nyandwi for failing to show that he would be unable to make money or make election contributions in Burundi and for failing to present any specific cases of persons in Nyandwi's position as a returning Twa refugee being tortured in Burundi.

Nyandwi appealed to the Board of Immigration Appeals (BIA), claiming that the IJ had failed to use the correct legal standard and had ignored relevant evidence. The BIA affirmed, finding no error in the IJ's "careful analysis of the component parts of a holistic claim." Nyandwi timely filed this petition for review.

## II

Because the BIA adopted and supplemented the IJ's decision, we review the IJ's decision supplemented by the Board's reasoning. *Herrera-Garcia v. Barr*, 918 F.3d 558, 561 (7th Cir. 2019). We review questions of law de novo. *Lozano-Zuniga v. Lynch*, 832 F.3d 822, 826 (7th Cir. 2016). We will remand for further consideration when the agency commits legal errors such as using an incorrect legal standard or overlooking key evidence that could have resulted in a different conclusion. *Sirbu v. Holder*, 718 F.3d 655, 656 (7th Cir. 2013); *Lam v. Holder*, 698 F.3d 529, 533–34 (7th Cir. 2012).

Nyandwi first asserts that the IJ committed legal error by failing to consider in the aggregate three risk factors that

Nyandwi had raised: (1) Nyandwi is Twa; (2) Nyandwi is a returning refugee; and (3) Nyandwi is likely to be targeted as an oppositionist due to his inability to pay the ruling party's compulsory election contributions. According to Nyandwi, these three reasons combine to render him particularly susceptible to torture. Because the IJ never considered that combination explicitly, Nyandwi argues, the IJ committed legal error. And, says Nyandwi, the Board did not cure this supposed error when it affirmed the IJ's decision. Second, Nyandwi alleges that the IJ erred in demanding corroborating evidence of specific cases in which returning refugees have been tortured and demanding corroborating evidence that Nyandwi would be unable to earn money in Burundi. Because the Burundi regime hides evidence of such specific cases, making them unavailable, and because Nyandwi lacked personal knowledge of Burundi and was in detention, Nyandwi claims that it was impossible for him to provide this information. Finally, Nyandwi argues the IJ and BIA committed legal error by ignoring three main pieces of evidence: (1) evidence that Burundi officials extort bribes disguised as mandatory election contributions; (2) evidence of Nyandwi's characteristics that could make Nyandwi seem like an oppositionist: his inability to speak the language, his identifiable Twa ethnicity, and the history of familial death in the earlier conflict; and (3) general evidence about the authoritarian tendencies of the Burundi government and that similarly-situated people have been tortured.

## A

We first consider whether the IJ erred in its analysis of the risk factors put forth by Nyandwi. To determine whether the IJ committed error, we must first establish the legal standard

the IJ was bound to follow. Both parties agree that agencies should use the aggregate risk legal standard, which requires that claims under CAT be considered in terms of the aggregate risk of torture and not only as separate, divisible claims. See *Matter of J-R-G-P-*, 27 I. & N. Dec. 482, 484 (BIA 2018). Five of our sister circuits have adopted this standard. See *Kamara v. Attorney General*, 420 F.3d 202, 213–14 (3d Cir. 2005); *Quijada-Aguilar v. Lynch*, 799 F.3d 1303, 1308 (9th Cir. 2015); *Rodriguez-Arias v. Whitaker*, 915 F.3d 968, 972–73 (4th Cir. 2019); *Marqus v. Barr*, 968 F.3d 583, 589 (6th Cir. 2020); *Abdi Omar v. Barr*, 962 F.3d 1061, 1065 (8th Cir. 2020). We see no reason to disagree with the parties, the BIA, or other circuits, so we adopt the aggregate risk approach for the determination of substantial risk and hold that the agency may address risk factors individually so long as it considers all sources of and reasons for risk cumulatively to determine whether there is a substantial risk of torture.

Nyandwi urges us to follow the leads of the Third and Fourth Circuits and take a quantitative or statistical approach to calculating aggregate risk. Those circuits have adopted such an approach to calculate the risk of torture an alien faces from different sources. The Third Circuit has held that an alien facing removal "is entitled to CAT protection if he is able to demonstrate that the cumulative probability of torture by [multiple sources] exceeds 50%." *Kamara*, 420 F.3d at 213–14. To calculate the sum of the weighted probability of torture by each potential source of torture, the court devised a formula for the adding of probabilities for mutually exclusive events.[1]

---

[1] Agencies were instructed to calculate the risk of torture from one source by multiplying the percentage chance of the alien's capture by that source by the percentage chance of torture by that source. *Kamara v. Attorney*

*Id*. at 214. The Fourth Circuit has followed the Third Circuit's approach, faulting an IJ for failing to "consider the aggregated risk caused by all three entities in unison by adding the probability of torture from each entity and determining whether that sum exceeded 50%." *Rodriguez-Arias*, 915 F.3d at 973. But, as far as we can tell, those two circuits have not applied that approach to calculate the risk of torture an alien faces due to different reasons for risk. Nyandwi's theory would be novel even under the statistical approach of the Third and Fourth Circuits.[2]

Either way, we decline to follow the Third and Fourth Circuits' quantitative or statistical approach to aggregate risk. We do not think this is the appropriate methodology for

_____

*General*, 420 F.3d 202, 214 (3d Cir. 2005). Then, the agencies were told to add together the percentage risk from each source to calculate aggregate risk. *Id*. The Third Circuit went on to suggest that agencies may need to calculate risk based on non-mutually exclusive events, for which the formula for calculating the overall risk of torture would be "(the weighted probability of [petitioner] being tortured by [Source A], if he finds himself only in [Source A] territories) + (the weighted probability of [petitioner] being tortured by the [Source B], if he finds himself only in [Source B] controlled territories) + (the weighted probability of [petitioner] being tortured by either, or both, [Source A] and [Source B] if [petitioner] finds himself in both [Source A] and [Source B] territories)." *Id*. at 214 n.10.

[2] Although the Sixth Circuit has described the Third and Fourth Circuits' quantitative approach as applying to "the cumulative probability of torture by [all of the] entities, or for all reasons," even that case's facts concerned threats from different sources, not threats for different reasons, and the Sixth Circuit did not apply the formulas described by the Third Circuit in *Kamara*, instead posing the question as whether the cumulative risks of torture exceed 50%. *Marqus v. Barr*, 968 F.3d 583, 589 (6th Cir. 2020) (cleaned up).

determining substantial risk. We have already held that "substantial risk" under CAT is a "non-quantitative restatement" of the "more likely than not" standard. *Perez-Montes v. Sessions*, 880 F.3d 849, 850 (7th Cir. 2018). Adding percentages is not a tenable method to determine substantial risk because "[t]he data and statistical methodology that would enable a percentage to be attached to a risk of torture simply do not exist." *Rodriguez-Molinero v. Lynch*, 808 F.3d 1134, 1135 (7th Cir. 2015); see also *Perez-Montes*, 880 F.3d at 850 ("[A] statistical requirement cannot be taken seriously and . . . the best an agency or court can do is look for substantial risk"). Taking a holistic, non-quantitative approach to the aggregation of factors accords with our requirements for agencies and judges in other contexts. In reviewing Social Security claims, for example, we have held that "an ALJ is required to consider the aggregate effects of a claimant's impairments" but have not taken a quantitative approach, finding it sufficient where an ALJ "stated that he had considered all of [the claimant's] symptoms together." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). Similarly, in reviewing whether probable cause existed for warrants, we have not assigned a percentage threshold to the requirement of "fair probability." See, *e.g.*, *United States v. Orr*, 969 F.3d 732, 736 (7th Cir. 2020) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). And in determining probable cause, factors must be analyzed in "totality," but we have never attached a statistical methodology for summing up the various factors. See *id.*; see also *Rodriguez-Molinero*, 808 F.3d at 1135.

A similar holistic methodology is appropriate for the aggregate risk standard for CAT claims. The agency need not assign percentage values to risk and engage in the adding of probabilities but is instead required to show that, in the end,

it looked at all the factors together. Therefore, we must ask in this case if the IJ's decision suffices to show that it had considered all of Nyandwi's risk factors cumulatively. The IJ concluded its decision by stating that "[h]aving considered all the relevant evidence, the Court finds Respondent has not established a substantial risk that he will be targeted for torture if he returns to Burundi." Admin. R. at 51. Although we create no hardline rule for what an IJ must say to satisfy the aggregate risk standard, what the IJ stated here is sufficient. The IJ treated risk as one single risk, illustrating that he was considering all the different factors as unified, aggregated together under one cumulative substantial risk umbrella, not as separate, independent risks. We agree with the BIA:

> The record reflects that in evaluating the respondent's claim, the Immigration Judge considered the relevant factors such as evidence of past torture, ability to relocate within the country, evidence of grave human rights violations or other relevant country conditions. The Immigration Judge's detailed consideration of various risk factors reflects a careful analysis of the component parts of a holistic claim. We do not view this analysis as a failure to consider aggregate risk.

Admin. R. at 4 (internal citations and quotation marks omitted). There was no legal error here warranting remand.

B

We next consider Nyandwi's argument that the IJ erred by requesting corroborating evidence that was not reasonably available. We need not reach the merits of this argument because Nyandwi has waived it by failing to raise it before the BIA. See *Hernandez-Alvarez v. Barr*, 982 F.3d 1088, 1094 (7th

Cir. 2020). To exhaust an argument, and thus avoid waiver, it must be "actually argued" in the administrative proceedings. *Duarte-Salagosa v. Holder*, 775 F.3d 841, 846 (7th Cir. 2014). It is not enough that the new argument bears some relation to the evidentiary record. *Id*. Rather, an argument is actually argued only when it puts the BIA "on notice" that the petitioner is trying to challenge the IJ's decision based on that argument. *Hamdan v. Mukasey*, 528 F.3d 986, 991 (7th Cir. 2008).

Nyandwi alleges that the IJ erred in demanding corroborating evidence of specific cases in which returning refugees have been tortured and in demanding corroborating evidence that Nyandwi would be unable to earn money in Burundi and so be viewed as an oppositionist, but Nyandwi never argued either point in his BIA brief. Nyandwi contends that he raised the issue of corroborating evidence of specific cases when he criticized the IJ for discounting a United Nations report because the report did not include specific examples of torture. But Nyandwi's argument, which consisted of the single sentence, "such an expectation is unrealistic[,]" appeared in a section of Nyandwi's BIA brief that argued that the IJ mischaracterized and discounted evidence, not that the IJ unreasonably requested additional evidence. See Admin. R. at 18. This is not enough to put the BIA on notice that Nyandwi was challenging the IJ's decision for the reason he now asserts. Second, Nyandwi argues that one sentence asserting that the IJ ignored a principle that country conditions alone can sustain an applicant's burden under the Immigration and Nationality Act "necessarily challenges the IJ's demand for corroborating evidence to demonstrate that Mr. Nyandwi would be viewed as an oppositionist." Pet'r's Reply Br. at 20. But this gives away the whole game. If Nyandwi had actually argued before the BIA his contention that the IJ demanded unavailable

corroborating evidence that because he would be unable to earn money he would be treated as an oppositionist, he would not now need to claim that he had necessarily—meaning impliedly—argued it. Nyandwi failed to make the argument to the Board that he seeks to pursue now, and, thus, it is waived.[3]

C

Last is Nyandwi's claim that the IJ ignored critical evidence. It did not. First, the IJ considered and correctly rejected Nyandwi's argument concerning extorted bribe payments disguised as election contributions. In order for such evidence to support Nyandwi's risk of torture argument, two inferential steps in a chain of hypotheticals are required: if Nyandwi does not make the payments, then he may be deemed an oppositionist; and if he is deemed an oppositionist, he may be personally singled out for torture. The IJ rightly rejected such a string of hypotheticals. When evidence is only tenuously connected to risk of torture via a string of hypotheticals, the evidence cannot be key. Second, the IJ considered Nyandwi's characteristics that could make him seem like an oppositionist. The IJ in its analysis noted both Nyandwi's Twa ethnicity and inability to speak the language, and the IJ recited Nyandwi's family history in the fact section of its decision. Finally, the evidence that Burundi's government is authoritarian and that people in Nyandwi's situation face persecution by the government constitutes evidence of generalized violence, which we have consistently held does not show risk that the petitioner will be targeted specifically. *Barry v. Barr*, 916 F.3d 666, 671 (7th Cir. 2019). It is not error for the IJ not to

---

[3] Nor would Nyandwi have succeeded on the merits of his argument because the IJ never requested such corroborating evidence from Nyandwi during the proceedings.

consider evidence that is insufficient to support a claim that Nyandwi is personally subject to a particularized risk of torture. See *id*.

Nyandwi may face a number of challenges in returning to Burundi, but at no point did the IJ err in determining that Nyandwi failed to show that he faces a substantial risk of torture.

The petition for review is DENIED.