RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0102p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

THABET MAHDI SALEH,

                    *Petitioner*,

    *v.*

MERRICK B. GARLAND, Attorney General,

                    *Respondent*.

No. 22-3036

Appeal from the Board of Immigration Appeals.
No. A 212 335 365

Decided and Filed:  May 2, 2024

Before:  GIBBONS, BUSH, and LARSEN, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ON BRIEF:**  Sabrina Balgamwalla, WAYNE STATE ASYLUM & IMMIGRATION LAW CLINIC, Detroit, Michigan, for Petitioner.  Sarah K. Pergolizzi, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

───────────────

## OPINION

───────────────

LARSEN, Circuit Judge.  Thabet Mahdi Saleh was granted refugee status in the United States in 2010 after he fled his home country of Iraq.  A few years later, however, Saleh was convicted of accosting children for immoral purposes and using a computer to commit a crime, in violation of Michigan law.  So the Department of Homeland Security (DHS) initiated removal proceedings against him.  An immigration judge (IJ) ordered him removed in 2014.  In 2018, Saleh sought to reopen his removal proceedings, seeking deferral of removal under the

Convention Against Torture (CAT).  The IJ granted the motion to reopen, but later denied Saleh's application for relief.  Saleh petitions for review.  For the reasons stated, we DENY the petition for review.

I.

Thabet Mahdi Saleh, a native and citizen of Iraq, left Iraq in 2007.  He was admitted to the United States in 2010 as a refugee.  His status was later adjusted to lawful permanent resident.  In 2014, however, Saleh was convicted of committing two crimes under Michigan law—accosting children for immoral purposes and using a computer to commit a crime.

Shortly thereafter, DHS began removal proceedings against Saleh.  In response, Saleh applied for asylum, withholding of removal, and protection under the CAT.  He feared returning to Iraq, explaining that he and his wife had previously been threatened and harmed by two militias because of his work with the United States Army and because of their mixed marriage, Saleh being a Sunni Muslim and his wife being a Shi'a Muslim.  The IJ denied all forms of relief and ordered that Saleh be removed to Iraq.  Saleh did not appeal that decision.

In 2018, Saleh moved to reopen his proceedings, seeking to apply for deferral of removal under the CAT.  He alleged changed country conditions; that Iraqi officials were suspicious of those who returned to Iraq after being removed from the United States; that his past experiences working for the United States Army elevated his risk of torture; and that his criminal convictions in the United States also enhanced his risk of torture.  Among the new documents he submitted was a report from Daniel W. Smith supporting Saleh's position that he would be tortured upon returning to Iraq.  Smith's declaration described himself as "a researcher specializing in Iraq who has been living primarily in the Iraqi cities of Baghdad, Sulaimaniya, and Erbil . . . since 2007." AR 1738.  DHS responded, arguing that Smith should be treated as a fact witness only, and offering the views of its own proffered expert, Dr. Denise Natali.

The IJ granted Saleh's motion to reopen to consider Saleh's application for CAT deferral. Before a hearing on the application, DHS again argued that Smith should be treated as a fact witness, not an expert.  Saleh's attorney agreed, and the IJ accordingly treated Smith as a fact witness.  Over Saleh's objection, the IJ admitted the government's witness, Natali, as an expert.

The IJ denied Saleh's application for CAT deferral in August 2018.  He found that Saleh was not credible and denied his application for this reason alone.  In the alternative, the IJ found that, even considering Saleh's testimony, Saleh had failed to show that he would more likely that not be tortured upon returning to Iraq.  Among the reasons—the IJ found "that the declaration of Denise Natali, an expert witness, is far more persuasive than the declaration of Daniel Smith, a percipient witness."  AR 217.

Saleh appealed the decision to the Board of Immigration Appeals (BIA).  He obtained new counsel on appeal.  Saleh challenged the IJ's adverse credibility finding, the decision to qualify Smith as a fact witness only, and the ultimate decision that Saleh wasn't entitled to CAT deferral.  The BIA assumed Saleh's credibility but saw no error in the other decisions.  Accordingly, it denied Saleh's petition.  Saleh now petitions for review of the BIA's decision.

II.

"Where, as here, the BIA issued a separate opinion, rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency determination."  *Umana-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013) (citation omitted).  We review its legal conclusions de novo and its factual findings under the substantial-evidence standard.  *Id.*

*Fact Witness.*  We begin with what Saleh calls the "dispositive" issue—the IJ's decision to treat Smith as a fact witness rather than as an expert.  Petitioner Br. at 31.  That issue permeates Saleh's petition, which hinges on the theory that had the agency given as much weight and credibility to Smith's report as Natali's, Saleh could have established entitlement to CAT deferral.  Saleh explains that the agency's unpublished opinions have taken inconsistent positions on whether Smith qualifies as an expert on country conditions in Iraq and contends that this alone warrants granting his petition for review.

This court is well-acquainted with the issue of Smith's qualifications as a witness. Previous petitioners have challenged an IJ's refusal to treat Smith as an expert witness or have attacked the BIA's inconsistent treatment of Smith's expert qualifications.  We have considered the arguments in different ways.  Sometimes we have treated such claims as asserting that the BIA acted arbitrarily.  *See, e.g.*, *Makdesion v. Garland*, 2023 WL 2972548, at *2 (6th Cir. Apr.

17, 2023); *Solaka v. Wilkinson*, 844 F. App'x 797, 801 (6th Cir. 2021).  Although the conflicting BIA opinions at issue "are unpublished and, therefore, not formally binding on the agency," we have noted that in some "circumstances, the BIA's failure to explain inconsistent outcomes may raise 'an inference of arbitrary decisionmaking.'" *Nissan v. Bar*, 788 F. App'x 365, 366–67 (6th Cir. 2019) (quoting *Ishac v. Barr*, 775 F. App'x 782, 788 (6th Cir. 2019)); *see also Makdesion*, 2023 WL 2972548, at *2.  Alternatively, we have treated the argument as raising a due process challenge to the IJ's refusal to qualify a proposed expert.  *See, e.g.*, *Zakariya v. Garland*, 2024 WL 869660, at *3 (6th Cir. Feb. 29, 2024); *Solaka*, 844 F. App'x at 800.

The results in this court have been different as well.  Some panels have remanded for the BIA to explain its inconsistent treatment of Smith's qualifications.  *See, e.g.*, *Makdesion*, 2023 WL 2872548, at *4; *Markos v. Garland*, 2024 U.S. App. Lexis 273, at *13 (6th Cir. Jan 4, 2024).  Others have found no error.  *See, e.g.*, *Solaka*, 844 F. App'x at 801.  And others have found no prejudice.  *See, e.g.*, *Zakariya*, 2024 WL 869660, at *3–4.  To say Smith's qualifications have spawned confusion is an understatement.  But this is not the case in which to clear the matter up because, in this case, Saleh's counsel expressly agreed that Smith should be treated as a fact witness only.

Before the IJ, counsel for DHS objected to Smith being qualified as an expert witness but agreed that Smith could be treated as a fact witness.  Saleh's counsel said that she was "in agreement with that."  AR 548.  So the IJ understandably ruled that "the declaration of Mr. Smith will not be admitted as that of an expert and therefore the opinions will not be considered, but it will be admitted as a percipient witness for the factual statements based therein based on his lengthy experience in Iraq."  *Id.*  When later discussing a supplemental declaration from Smith, Saleh's counsel again indicated that she was not objecting to Smith being treated as a fact witness only and clarified that the IJ was "[c]orrect" when he said—"that's the basis on which [Smith's supplemental declaration] will be admitted, percipient witness only."  *Id.* at 551.

Relying solely on counsel's concession, the BIA concluded that the IJ had not erred by treating Smith as a fact witness only.  And "[t]o the extent that [Saleh] allege[d] that his prior counsel provided ineffective assistance," the BIA concluded that Saleh "ha[d] not satisfied the

procedural requirements set forth in *Matter of Lozada*, 19 I&N Dec. 637, 639 (BIA 1988)." *Id.* at 4 n.2

"In a removal proceeding, petitioners are bound by the concessions of their attorneys to the IJ unless they can show ineffective assistance of counsel or some other egregious circumstances." *Hanna v. Holder*, 740 F.3d 379, 387 (6th Cir. 2014) (citation omitted); *see also De Morales v. Barr*, 799 F. App'x 364, 366 (6th Cir. 2020). Counsel's concession to the IJ could not have been more explicit—she twice agreed with treating Smith as a fact witness. Consequently, the IJ had no reason to consider treating Smith as anything else. And it was not error for the BIA to rely on counsel's concession to affirm the IJ's decision.

Saleh asks to be freed from his first counsel's concession. As noted, our caselaw has suggested two avenues for such relief—ineffective assistance of counsel or egregious circumstances.[1] *See Hanna*, 740 F.3d at 387. The first is off the table for Saleh. The BIA concluded that Saleh could not claim ineffective assistance because he had failed to follow the necessary procedural requirements. He does not challenge that determination here and thus has abandoned any argument that the BIA erred in that respect. *See Hih v. Lynch*, 812 F.3d 551, 556 (6th Cir. 2016).[2] The second is off the table too. Saleh did not ask the BIA to relieve him of his attorney's concession because of egregious circumstances. *See De Morales*, 799 F. App'x at 367 (declining to consider an egregious-circumstances argument where the petitioner failed to present it to the BIA). Nor did he do so in his opening brief here. *See Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018) (holding that a party forfeits an argument raised for the first time in his reply brief). So Saleh has not shown that the agency erred by treating Smith as a fact witness only.

---

[1]We note that under our caselaw, there is some potential for confusion between ineffective assistance of counsel and "egregious circumstances," both of which aim at attorney mistakes and resulting prejudice. *See De Morales*, 799 F. App'x at 366. To our knowledge, we have granted relief under the "egregious circumstances" test only once, in the case of a subsequent change in the law. *See Hanna*, 740 F.3d at 390.

[2]At the time he filed his brief, Saleh had an outstanding motion to reopen before the BIA. In that motion, Saleh asks the BIA to reconsider its decision on his ineffective assistance of counsel claim, on the ground that he has since attempted to cure any procedural deficiencies to his claim.

*Remaining Challenges.* To qualify for protection under CAT, an applicant must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). "[A]ll evidence relevant to the possibility of future torture shall be considered." *Id.* § 1208.16(c)(3). Saleh argues that in assessing the risk of torture, the agency erred by not considering, in the aggregate, the probability that he would be tortured for the various reasons and by the various sources he alleged.

A panel of this court recently held in a published opinion that when "a petitioner invokes more than one independent source of or reason for the risk of torture, the Board must consider the petitioner's risk of torture in the aggregate." *Abdulahad v. Garland*, -- F.4th --, 2024 WL 1573886, at *8 (6th Cir. Apr. 11, 2024). Under the aggregation rule, "a petitioner alleging probable torture from independent sources need not demonstrate that the probability of torture by one of the entities, or for one of the reasons, taken alone, exceeds 50%. Instead, the question is whether the cumulative probability of torture by all of the entities, or for all reasons, exceeds 50%." *Id.* (cleaned up).

Although this court had not decided *Abdulahad* when the BIA rendered its decision in this case, *Abdulahad* concluded that the BIA had previously endorsed the aggregate approach. *See Abdulahad*, 2024 WL 1573886, at *7 (citing *Matter of J-R-G-P-*, 27 I. & N. Dec. 482, 484 (BIA 2018)). And, in contrast to *Abdulahad*, the BIA's opinion in this case expressly invoked that approach. The BIA acknowledged Saleh's contention that the IJ "failed to conduct an aggregate analysis of the risk of torture," but concluded that "the record does not indicate that the Immigration Judge failed to consider [Saleh's] likelihood of torture in the aggregate." AR 5.

Did the BIA satisfactorily analyze Saleh's CAT claim under the aggregation rule? To answer that question, we must first decide what that rule requires. One court has suggested that this is a quantitative endeavor, to be resolved through the application of mathematical formulae and statistical analysis. *See Kamara v. Atty Gen.*, 420 F.3d 202, 213–14 (3d Cir. 2005).[3] Others

---

[3]As one court summarized the Third Circuit's approach:

Agencies were instructed to calculate the risk of torture from one source by multiplying the percentage chance of the alien's capture by that source by the percentage chance of torture by that source. Then, the agencies were told to add together the percentage risk from each source to calculate aggregate risk. The Third Circuit went on to suggest that agencies may need to calculate

have rejected that view, concluding that "[t]he agency need not assign percentage values to risk and engage in the adding of probabilities but is instead required to show that, in the end, it looked at all the factors together." *Nyandwi v. Garland*, 15 F.4th 836, 840 (7th Cir. 2021); *Ibarra Chevez v. Garland*, 31 F.4th 279, 290 (4th Cir. 2022); *see also Iraheta-Martinez v. Garland*, 12 F.4th 942, 960 (9th Cir. 2021); *Jama v. Wilkinson*, 990 F.3d 1109, 1120 (8th Cir. 2021); *Hassan v. Rosen*, 985 F.3d 587, 591 (8th Cir. 2021).

In *Nyandwi*, the Seventh Circuit explained why this "holistic, non-quantitative approach" makes sense. 15 F.4th at 840. First, the court doubted the existence of "data and statistical methodology that would enable a percentage to be attached to a risk of torture." *Id.* And it noted that a holistic approach "accords with our requirements for agencies and judges in other contexts":

> In reviewing Social Security claims, for example, we have held that an ALJ is required to consider the aggregate effects of a claimant's impairments but have not taken a quantitative approach, finding it sufficient where an ALJ "stated that he had considered all of [the claimant's] symptoms together. Similarly, in reviewing whether probable cause existed for warrants, we have not assigned a percentage threshold to the requirement of "fair probability." And in determining probable cause, factors must be analyzed in "totality," but we have never attached a statistical methodology for summing up the various factors.

*Id.* (internal citations and quotation marks omitted).

We are persuaded by the Seventh Circuit's reasoning and conclude that its method of assessing aggregate risk is appropriate and consistent with our caselaw. Nothing in *Abdulahad* indicates that a statistical weighing of the probabilities is required. And importantly, our pre-*Abdulahad* published caselaw applied a holistic, non-quantitative approach. In *Marqus v. Barr*,

---

risk based on non-mutually exclusive events, for which the formula for calculating the overall risk of torture would be "(the weighted probability of [petitioner] being tortured by [Source A], if he finds himself only in [Source A] territories) + (the weighted probability of [petitioner] being tortured by the [Source B], if he finds himself only in [Source B] controlled territories) + (the weighted probability of [petitioner] being tortured by either, or both, [Source A] and [Source B] if [petitioner] finds himself in both [Source A] and [Source B] territories)."

*Nyandwi v. Garland*, 15 F.4th 836, 840 n.1 (7th Cir. 2021) (internal citations omitted) (citing *Kamara*, 420 F.3d at 214 & n.10).

we assumed without deciding that the aggregation rule applied.  968 F.3d 583, 589 (6th Cir. 2020).  But we made no mention of statistics or formulas when determining whether the BIA had adequately analyzed the petitioner's CAT claim in the aggregate.  *Id.* at 589–90.  Instead, we simply examined the agency opinions to see whether they had "properly combined the threats from each [source] in deciding" whether the petitioner had shown a likelihood of torture.  *Id.*; *see also Yousif v. Garland*, 53 F.4th 928, 935 (6th Cir. 2022).  Our court has previously applied a holistic, non-quantitative approach to aggregating risks of torture, and we reaffirm that approach today.

With that understanding of what the aggregation rule requires, we see no error in the BIA's decision.  The opinion demonstrates that the agency considered the sources of and reasons for the possibility of torture together when considering Saleh's CAT claim.  For example, it noted that "[Saleh] argues on appeal that he will be tortured in Iraq by or with the acquiescence of Iraqi officials because of his Sunni religion, his mixed marriage, his prior military service in Iraq, his status as a westernized Iraqi, or his status as a deportee from the United States."  AR 3. It further noted Saleh's argument that both militia "and the Iraqi and Iranian governments will likely torture him upon return to Iraq."  *Id.* at 4.  The BIA determined that "[t]he record does not reflect that Iraqi authorities or anyone [Saleh] fears has the specific intent to inflict severe pain or suffering on him."  *Id.* at 6.  And it acknowledged the IJ's conclusion "that [Saleh] has not established that it is more likely than not that he will be tortured by the Iraqi government or by forces that the Iraqi government acquiesces in, or turns a willful blind eye to."  *Id.*  This is precisely the kind of analysis we have deemed sufficient to show that the BIA "properly combined the threats from each in deciding that [the petitioner] did not demonstrate the requisite likelihood of torture."  *Marqus*, 968 F.3d at 590.  So too here.  The agency "properly analyzed [Saleh's] probability of torture in the aggregate."[4]  *Id.*

---

[4]Saleh argues that the BIA failed to consider two reasons that led to his fear of torture on return to Iraq— his mixed marriage and his prior service to the U.S. government.  We see no error.  The BIA acknowledged the mixed marriage in its opinion.  And Saleh feared that the Al Mahdi Army would torture him for his prior service to the United States.  This claim was based largely on his testimony regarding threats he had received while in the United States that he attributed to the Al Mahdi militia.  Even if the BIA didn't specifically mention Saleh's previous service to the United States as a reason for torture, it did analyze the lone source that Saleh alleged would torture him for this reason.  *See Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) ("[A] reviewing court must 'uphold' even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" (quoting

Finally, Saleh argues that the BIA erred by not remanding his case to allow the IJ to reconsider the weight assigned to Dr. Natali's expert statement. He contends that her appointment as U.S. Assistant Secretary for the Bureau of Conflict and Stabilization Operations in October 2018, less than a year after she signed her statement, and her involvement in litigation as a government witness in *Hamama v. Adducci*, No. 17-cv-11910 (E.D. Mich.), are reasons to doubt her statement. Saleh offers no legal authority or support for his claim that this new information would likely change the outcome of the case, and the BIA didn't err by so concluding. *See Yousif*, 53 F.4th at 936 (The BIA can deny a motion to remand "when the new evidence offered is not likely to change the result of the case." (cleaned up)).

\* \* \*

We DENY the petition for review.

---

*Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974))). The BIA then agreed with the IJ that Saleh had failed to establish any chance of torture by the Al Mahdi Army on return to Iraq. *See* AR 6 ("The Immigration Judge found that [Saleh] has not established that the Al Mahdi Army continues to search for him or remembers who he is. The Immigration Judge also found that [Saleh] has not demonstrated that he would be subjected to torture in Iraq by such individuals as they have not acted on their threats made years ago."). The IJ, for his part, concluded that Saleh had "provided *no evidence* that the men who" threatened him "in 2012 were members of, or otherwise affiliated with, the Al Mahdi militia." *Id.* at 219 (emphasis added). Nor had Saleh "corroborated his claim that the Al Mahdi militia continues to search for him, that they remember who he is, or that such a 'most wanted' list even exists, let alone that he is included on it." *Id.* at 219–20. In other words, the agency concluded that Saleh's fear of torture for this reason was entirely unfounded. There is no reason for the agency to aggregate such claims.